United States District Court
Southern District of Texas
**ENTERED**
August 24, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| CATHERINE S. CURTIS, §<br>§<br>     Plaintiff, §<br>VS. §<br>§<br>CERNER CORPORATION; QUAMMEN §<br>HEALTH CARE CONSULTANTS, INC.; §<br>and SIEMENS MEDICAL SOLUTIONS §<br>USA, INC., §<br>§<br>     Defendants. § | CIVIL ACTION NO. 7:19-cv-00417 |

## OPINION AND ORDER

The Court now considers "Defendant Cerner Corporation's Motion to Dismiss and Memorandum in Support"[1] and "Defendant Siemens Medical Solutions USA, Inc.'s Motion to Dismiss and/or Strike, and Brief in Support"[2] and Plaintiff Catherine S. Curtis's response.[3] After considering the motions, record, and relevant authorities, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss.

### I. BACKGROUND AND PROCEDURAL HISTORY

This case originated as an adversary proceeding in bankruptcy.[4] Plaintiff Catherine S. Curtis is a bankruptcy trustee "duly appointed by the Court" upon the bankruptcy case's initiation[5] and now stands in the shoes of the Debtor.[6] On behalf of Bay Area Regional Medical Center, LLC—the debtor in bankruptcy—and the debtor's estate, the trustee-plaintiff is pursuing

---

[1] Dkt. No. 49.
[2] Dkt. No. 50.
[3] Dkt. No. 58.
[4] *Curtis v. Cerner Corp. (In re Bay Area Regional Med. Ctr., LLC)*, Ch. 7 Case No. 19-70013-EVR. Adv. No. 19-07010 (Bankr. S.D. Tex. 2019).
[5] Dkt. No. 10 at 1, ¶ 1.
[6] *Cf.* 11 U.S.C. § 108 (empowering a bankruptcy trustee to bring the debtor's unexpired claims).

14 claims against Defendants seeking to recover millions of dollars.[7] Plaintiff's claims arise out of allegedly failed healthcare software implementation at a hospital.

The following are allegations from Plaintiff's complaint. Bay Area Regional Medical Center, LLC (Debtor) opened a hospital facility in Webster, a suburb of Houston, in Harris County, Texas, in "July/August 2014."[8] Leading up to the facility's opening, Debtor wanted to implement healthcare software. Defendant Siemens Medical Solutions USA, Inc. (Siemens) offered Debtor a "comprehensive suite of computer software" called Soarian that was intended to integrate billing and clinical operations all-in-one.[9] Siemens recommended Debtor also hire Quammen Health Care Consultants, Inc. (Quammen) to implement Soarian at the facility and tailor the software to Debtor's specific needs.[10] In September 2013, Debtor took the offer and executed two master services agreements with Siemens and Quammen respectively to implement Soarian.[11] Soarian implementation typically takes 10 months.[12] However, "[t]he wheels fell off Soarian's functionality and Quammen's implementation while the ink on the Siemens MSA and Quammen MSA was still wet. It was, in short, a debacle from the word go."[13] Quammen did not report to begin Soarian implementation until April 2014, condensing the usual 10-month process into a "four-month frenzy."[14] Siemens failed to exercise oversight.[15] As a result of the implementation stumbles, Debtor paid an additional approximately $2.2 million "in remediation-related revenue that Debtor was forced to pay because by that point Debtor was effectively a

---

[7] Dkt. No. 10 at 3, ¶ 7; Dkt. No. 8 at 1–2.
[8] Dkt. No. 10 at 3, ¶ 8.
[9] *Id.* ¶ 9.
[10] *Id.* at 4, ¶ 10.
[11] *Id.* ¶ 12.
[12] *Id.* ¶ 11.
[13] *Id.* at 6, ¶ 15.
[14] *Id.* ¶ 16.
[15] *Id.* ¶¶ 17–18, & at 7, ¶ 20.

hostage of Siemens and Quammen" to fix the implementation,[16] followed by a further at least $11 million as Debtor paid for remediation between 2014 and 2016.[17] When Debtor opened the hospital facility in 2014, Soarian malfunctioned until Debtor closed the facility and discharged patients in 2018, resulting in insurance billing losses (resulting from, for example, missing revenue codes, prices, and payer identification) of approximately $82 million when insurance claims expired.[18] Debtor incurred further losses of physician turnover, loss of patient goodwill, and overextension of credit and consequently reduced creditworthiness.[19] Defendant Cerner Corporation (Cerner) assumed Siemens' contract in 2015 or 2016 but perpetuated the Soarian failures.[20]

Plaintiff brings causes of action for:

1. Breach of Contract (against all defendants)
2. Breach of Express Warranties (against all defendants)
3. Breach of Implied Warranties (against all defendants)
4. Negligence (against all defendants)
5. Fraud (against all defendants)
6. Fraudulent Inducement (against Siemens & Quammen)
7. Negligent Misrepresentation (against all defendants)
8. Negligent Hiring (against all defendants)
9. Unjust Enrichment (against all defendants)
10. Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(2)) (against Siemens and Cerner)
11. Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.006(a)) (against Siemens and Cerner)
12. Avoidance of Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B) (against Cerner)
13. Recovery of Fraudulent Transfers under 11 U.S.C. § 550 (against Siemens and Cerner)
14. Recovery of Attorney's Fees and Costs (against all defendants).[21]

---

[16] *Id.* at 7, ¶ 19.
[17] *Id.* at 8, ¶ 23.
[18] *Id.* at 7–8, ¶¶ 20–22.
[19] *Id.*
[20] *Id.* at 8–9, ¶¶ 24–26. For its part, Siemens asserts that "[i]n 2015, Siemens assigned its MSA with Debtor to Cerner." Dkt. No. 50 at 4 (citing Dkt. No. 10 at 8–9, ¶¶ 24–25).
[21] Dkt. No. 1 at 1–2.

Plaintiff seeks damages, restitution, recovery/avoidance of fraudulent transfers, court costs and attorneys' fees, and interest.[22]

This Court held in April 2020 that, given the weight of factors favoring withdrawal of the reference of this case to Bankruptcy Court, such as the non-bankruptcy-related nature of most of Plaintiff's claims, the case and all proceedings should be placed in this Court.[23] Now in this Court, Defendants Cerner's and Siemens's motions to dismiss are ripe for consideration.

## II. DISCUSSION

### a. Preliminary Issues

Though the parties initially numbered their paragraphs in their first briefs before this Court,[24] all parties have since inexplicably abandoned the practice.[25] The Court notes that the parties' briefs lack numbered paragraphs entirely, hindering the Court's reference to specific arguments. As a threshold matter, the Court cautions all parties that future submissions should consistently number each paragraph to properly comply with the Federal Rules of Civil Procedure.[26]

Although Plaintiff's process server attested that Quammen has been appropriately served under Federal Rule of Bankruptcy Procedure 7004,[27] mail to Quammen's registered agent has been returned undeliverable since this Court's order for initial conference.[28] The Florida Department of State, Division of Corporations' website for Quammen indicates that Quammen's

---

[22] Dkt. No. 10 at 20.
[23] Dkt. No. 8.
[24] *See* Dkt. Nos. 2–3.
[25] Dkt. Nos. 49–50, 58.
[26] FED. R. CIV. P. 7(b)(2) ("The rules governing captions and other matters of form in pleadings apply to motions and other papers."); FED. R. CIV. P. 10(b) (emphasis added) ("A party must state its claims or defenses *in numbered paragraphs*, each limited as far as practicable to a single set of circumstances.").
[27] Dkt. No. 15; *see* FED. R. CIV. P. 4(h)(1)(B) (process may be served on a registered agent); Dkt. No. 10 at 2, ¶ 3 (describing service on Quammen).
[28] *E.g.*, Dkt. Nos. 44, 61–62, 65.

registered agent changed effective June 3 or 4, 2020.[29] The Court **ORDERS** the Clerk of the

Court to update Quammen's address to the following to avoid further undeliverable mail:

> Quammen Health Care Consultants, Inc.
> ℅ United States Corporation Agents, Inc.
> 5575 S Semoran Blvd, Suite 36
> Orlando FL 32822

Quammen has so far failed to appear in Bankruptcy Court or in this Court.

The final preliminary issue is that, at the end of Plaintiff's response brief is a short

paragraph contending that, "[i]n the event the Court agrees that the Motions should be granted in

whole or in part, the Court should deny the request for dismissal and grant the Trustee leave to

amend the Complaint."[30] This is improper. First, requests to the Court must be made by motion,

not in a response brief.[31] Furthermore, the Court recently dealt with a near-identical request and

held that cursory requests for leave to amend would be denied.[32] The Court's holding is now the

same. Plaintiff's bare bones request to amend is **DENIED**.[33]

### b.  Jurisdiction

This Court must satisfy its jurisdiction.[34] The Court has jurisdiction under 28 U.S.C.

§§ 1334(a) and 157.[35]

### c.  Legal Standard for the Motions to Dismiss

The Court uses federal pleading standards to determine the sufficiency of a complaint.[36]

Under Federal Rule of Civil Procedure 12(b)(6), to avoid dismissal, the complaint "must contain

---

[29] *See* http://search.sunbiz.org/Inquiry/CorporationSearch/ByDocumentNumber, Document Number P09000047622.
[30] Dkt. No. 58 at 28–29.
[31] FED. R. CIV. P. 7(b)(1).
[32] *VTX Commc'ns, LLC v. AT&T Inc.*, No. 7:19-cv-269, 2020 WL 918670, at *5–6 (S.D. Tex. Feb. 26, 2020) (Alvarez, J.).
[33] *See Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (affirming the district court's denial of a "bare bones motion to amend").
[34] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).
[35] *See* Dkt. No. 8.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[37] The Court accepts all well-pleaded facts as true (even if doubtful or suspect[38]) and views those facts in the light most favorable to the plaintiff (because a Rule 12(b)(6) motion is viewed with disfavor[39]), but will not strain to find inferences favorable to the plaintiff.[40] A plaintiff need not plead detailed factual allegations, but must plead more than "'naked assertion[s] devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.[41] Courts first disregard any conclusory allegations or legal conclusions[42] as not entitled to the assumption of truth,[43] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[44] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45] Courts have "jettisoned the [earlier] minimum notice pleading requirement"[46] and the complaint must plead facts that "nudge" the claims "across the line from

---

[36] *See Genella v. Renaissance Media*, 115 F. App'x 650, 652–53 (5th Cir. 2004) (holding that pleadings must conform to federal pleading requirements).

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[38] *Twombly*, 550 U.S. at 555–56.

[39] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) ("This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted."'").

[40] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[41] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557; *see also id.* at 679 (holding that a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" does not suffice to state a claim).

[42] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quotation omitted) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

[43] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

[44] *Iqbal*, 556 U.S. at 678–79; *see also Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

[45] *Iqbal*, 556 U.S. at 678.

[46] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).

conceivable to plausible."[47] The complaint must plead every material point necessary to sustain recovery; dismissal is proper if the complaint lacks a requisite allegation.[48] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[49] The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[50] Because the focus is on the pleadings, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56,"[51] but not if a defendant attaches documents to a motion to dismiss that are "referred to in the plaintiff's complaint and are central to her claim."[52]

### d. Analysis

#### 1. *Count 1: Breach of Contract Claim Against All Defendants*

Defendant Siemens first moves to dismiss all of Plaintiff's claims "because she fails to plead any factual allegations regarding any effort to satisfy the dispute resolution provisions" of the relevant agreement.[53] The only authorities Siemens advances, however, are from New York and Florida intermediate appellate courts.[54] Furthermore, although the master services agreement does contemplate a dispute resolution procedure,[55] nothing in the dispute resolution provision necessitates its exhaustion. Indeed, a section contemplating the dispute resolution process

---

[47] *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).
[48] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).
[49] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))
[50] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
[51] FED. R. CIV. P. 12(d).
[52] *Causey v. Sewell Cadillac–Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004).
[53] Dkt. No. 50 at 25.
[54] *Id.* (citing *Acme Supply Co. v. City of New York*, 834 N.Y.S.2d 142, 143 (App. Div. 2007); *Gray Line of Orlando, Ltd. v. Cent. Fla. Reg'l Transp.*, 722 So. 2d 940, 941 (Fla. Dist. Ct. App. 1998)).
[55] *See* Dkt. No. 52-1 at 15, § 7.1.

provides that "[t]he right of the non-defaulting party to terminate this Agreement under this Section is in addition to all other rights available under this Agreement, at law or in equity."[56] In other words, the dispute resolution procedure is not exclusive and does not obviate judicial remedies. The Court is unpersuaded by Siemens's argument.

Defendant Siemens next moves to dismiss Plaintiff's breach of contract claim as barred by a 4-year statute of limitations.[57] Defendant Cerner makes no argument that the breach of contract claim is time-barred.[58] Plaintiff responds that the statute of limitations is an affirmative defense that Plaintiff has not admitted all the elements of in the complaint, and Plaintiff argues that the continuing violations doctrine, the discovery rule, and Defendants' alleged fraudulent concealment all toll the accrual of the statute of limitations.[59]

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[60] However, "[d]etermining when a plaintiff has sufficient information for the limitations period to begin is often fact specific and inappropriate for a motion to dismiss pursuant to Rule 12(b)(6)."[61] The Court may await further factual development before ascertaining whether the statute of limitations bars Plaintiff's claims. "Dismissal should be granted 'only when the plaintiff's potential rejoinder to the affirmative defense was foreclosed by

---

[56] *Id.* at 19, § 12.2.
[57] Dkt. No. 50 at 10.
[58] *See* Dkt. No. 49 at 4–5, 11.
[59] Dkt. No. 58 at 16–20.
[60] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *see Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050–51 (5th Cir. 1982) (holding that, when a counterclaim showed that a contract was executed outside the limitations period, the "counterclaim on its face appears to reveal the existence of an affirmative defense to it, which would make the granting of a Rule 12(b)(6) dismissal proper").
[61] *In re Cobalt Int'l Energy, Inc.*, No. CV H-14-3428, 2016 WL 215476, at *9 (S.D. Tex. Jan. 19, 2016) (Atlas, J.) (citing *LC Capital Partners, LP v. Frontier Ins. Grp.*, 318 F.3d 148, 156 (2d Cir. 2003))

the allegations in the complaint.'"[62] In other words, the complaint must have effectively pled Plaintiff out of court for the statute of limitations to be grounds for dismissal.[63]

The statute of limitations for a breach of contract is four years.[64] The claim accrues when the contract is breached,[65] in other words, "when facts come into existence that authorize a claimant to seek a judicial remedy."[66] "A breach occurs when a party fails or refuses to do something he has promised to do."[67] However,

> [i]f the parties' agreement contemplates a continuing contract for performance, the limitations period does not usually commence until the contract is fully performed, unless one party refuses to fulfill the contract or prevents the other party from performing. In such a continuing contract, where a claim for work, labor, or materials furnished is based on an entire contract for continuous work, labor, or materials, the claim is considered to be an entire demand, and the limitations period will not commence until the contract is finished.[68]

Additionally, although the statute of limitations begins running when a claim accrues, accrual may be delayed. "[A]ccrual of a cause of action is deferred in cases of fraud or in which the wrongdoing is fraudulently concealed, and in discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified."[69]

Defendant Siemens argues that Plaintiff's breach of contract claim accrued in July/August 2014, when Debtor opened the hospital facility.[70] However, although Plaintiff alleges contractual issues "from the word go,"[71] Plaintiff also alleges that Defendants Cerner and

---

[62] *JNT Enters. v. Nationwide Prop. & Cas. Ins. Co.*, No. H-13-1982, 2014 U.S. Dist. LEXIS 199582, at *11 (S.D. Tex. Apr. 15, 2014) (Atlas, J.) (quoting *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 352 (5th Cir. 2011)).

[63] *Sivertson v. Clinton*, No. 3:11-cv-0836-D, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (collecting cases).

[64] *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.051).

[65] *Id.*

[66] *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011).

[67] *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

[68] *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

[69] *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

[70] Dkt. No. 50 at 10–11.

[71] Dkt. No. 10 at 6, ¶ 15.

Siemens invoked "'remediation' provisions" of the master services agreement that, "from 2014 through 2016," resulted in Plaintiff paying additional amounts to Defendants to fix the defects and substandard implementation of Soarian.[72] Because neither party cites to the master services agreement or any provision therein regarding this argument, the Court will take as true[73] Plaintiff's allegations that the "'remediation' provisions" of the agreement[74] contemplated a "continuing contract" like a construction contract. The Court likens the instant master services agreement to a construction contract because the agreement contemplates development and implementation (i.e., construction) of an operational software product.[75]

> Typically, construction is performed under a continuing contract. In a continuing contract, the contemplated performance and payment is divided into several parts . . . . Thus, a construction contract continues until the work is completed by the contractor, with periodic progress payments made by the owner to the contractor based on estimates of the value of work completed in each period. Limitations begins to run on a continuing contract at the earlier of the following: (1) when the work is completed; (2) when the contract is terminated in accordance with its terms; or (3) when the contract is anticipatorily repudiated by one party and this repudiation is adopted by the other party. Repudiation is conduct which shows a *fixed* intention to abandon, renounce, and refuse to perform the contract.[76]

So for example, when a construction contract provides for contractors to construct a finished house, and the construction is incomplete until the buckle in the tile is repaired and the faulty electrical wiring is remediated, limitations do not begin to run until the one of the three situations described above materializes. Therefore, the Court holds that Plaintiff's complaint sufficiently alleges that this claim could not have begun to accrue until 2016,[77] when Debtor presumably paid

---

[72] Dkt. No. 10 at 8–9, ¶¶ 23, 25.

[73] *See supra* note 38.

[74] *See* Dkt. No. 10 at 8–9, ¶¶ 23, 25.

[75] *See* Dkt. No. 10, ¶¶ 12, 16–17, 23, 25.

[76] *Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 381–82 (Tex. App.—Fort Worth 1994, writ denied) (citations omitted); *see Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 321 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

[77] *But see* Dkt. No. 58 at 18 n.9 (arguing that breached duties extended past 2016).

the last remediation payment under the contract.[78] Plaintiff's 2019 complaint is therefore within the 4-year statute of limitations. The Court need not reach arguments regarding statute of limitations tolling with respect to this claim.

Defendant Cerner moves to dismiss Plaintiff's breach of contract claim for failure to state a claim.[79] Cerner argues that the claim should be dismissed because Plaintiff "does not identify which provisions of the Siemens MSA were allegedly breached by Cerner, when they were breached, or the underlying facts that give rise to a claim for breach under any provision of the Siemens MSA."[80] Plaintiff responds that she adequately pleaded contractual violations and assignment of the contract to Cerner.[81]

"The elements in a claim for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach."[82] Defendant cites no authority to support the proposition that Plaintiff must identify specific contract provisions sued upon to maintain a breach of contract claim. To require such formulaic pleading would militate against the "simplicity and brevity of statement which the rules contemplate" and harken back to rigid writ pleading which the Federal Rule of Civil Procedure were meant to repeal.[83] Cerner next argues that Plaintiff's complaint "groups Cerner's actions with Siemens's,"[84] but Siemens admits that it "assigned its MSA with Debtor to Cerner" in 2015.[85] Plaintiff specifically alleges that "[f]ollowing Siemens's assignment, Cerner perpetuated the utter disregard of the contractual obligations and predatory use of the Siemens MSA's 'remediation' provisions requiring Debtor to pay inflated prices for

---

[78] *See id.*
[79] Dkt. No. 49 at 4–5.
[80] *Id.*
[81] Dkt. No. 58 at 5.
[82] *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.).
[83] FED. R. CIV. P. 84 advisory committee's note to 2015 amendment.
[84] Dkt. No. 49 at 5.
[85] Dkt. No. 50 at 4 (citing Dkt. No. 10 at 8–9, ¶¶ 24–25).

Cerner's substandard fixes."[86] "[C]ourts may imply an assumption of the obligations of the contract from the acceptance of an assignment."[87] Although Defendant Cerner asserts that it never had any contractual relationship with Debtor,[88] this amounts to a factual disagreement with Plaintiff's allegations of assignment, which is not an appropriate basis for dismissal.[89] Plaintiff further specifies what contractual obligations Cerner allegedly violated, including "[i]naccurate or non-existent claim and charge captures" and "[m]issing implementation of critical medical-necessity standards" in Soarian, after assignment to Cerner.[90] The Court finds these allegations sufficient to state a claim against Cerner for breach of contract.

Accordingly, the Court **DENIES** both Defendants' motions to dismiss to the extent they seek to dismiss Plaintiff's breach of contract claim.

### 2. Counts 2–3: Breach of Warranty Claims Against all Defendants

Defendant Siemens moves to dismiss Plaintiff's warranty claims as barred by a 4-year statute of limitations.[91] Plaintiff responds that Texas's Uniform Commercial Code 4-year statute of limitations does not apply, and even if it did, a statutory exception and the continuing violations doctrine, discovery rule, and fraudulent concealment delays accrual of Plaintiff's warranty claims.[92]

Texas courts do not appear to have established any fixed statute of limitations on common law breach of warranty claims,[93] and neither Siemens nor Plaintiff cites to one.[94]

---

[86] Dkt. No. 10 at 9, ¶ 25.
[87] *McKinnie v. Milford*, 597 S.W.2d 953, 958 (Tex. Civ. App.—Tyler 1980, writ ref'd n.r.e.).
[88] Dkt. No. 49 at 1 n.1.
[89] *See supra* note 38 (the Court takes all of Plaintiff's allegations as true).
[90] *Id.* at 8, ¶ 22.
[91] Dkt. No. 50 at 12.
[92] Dkt. No. 58 at 18–20.
[93] *See Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 574 (Tex. 1991) (holding that the UCC did not apply, but not establishing a common law statute of limitations); *Clark v. Mustang Mach. Co., Ltd.*, 571 S.W.3d 305, 312–17 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (Jennings, J., concurring) (dealing with a warranty statute of limitations argument at length but never describing a fixed period of limitations under common law).

However, "[s]ection 2.725 [of Texas's Uniform Commercial Code] applies to an action for breach of warranty for the sale of goods, whether implied or express."[95] Section 2.725 provides for a 4-year statute of limitations on any "action for breach of any contract for sale," and further provides in § 2.725(b) that:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.[96]

Under the statute, "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action."[97]

The Court holds that a case neither party cited, *Propulsion Technologies, Inc. v. Attwood Corp.*,[98] controls which statute of limitations applies. In *Propulsion Technologies*, the Fifth Circuit noted that the definition of "goods" is to be interpreted broadly to carry out the Uniform Commercial Code purpose of achieving uniformity in commercial transactions.[99] The Fifth Circuit specifically noted:

> Even where the production of goods is labor-intensive and the cost of goods is relatively inexpensive, such as for . . . *custom computer software*, jurisprudence has considered the contracts for production and delivery to be transactions predominately in "goods." This contract would have to be much more service oriented for its "essence" or "dominant" factor to be the furnishing of services.[100]

---

[94] *See* Dkt. No. 50 at 12; Dkt. No. 58 at 18.
[95] *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 815 (S.D. Tex. 2013) (Harmon, J.) (citing *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 545–46 (Tex. 1986)).
[96] TEX. BUS. & COM. CODE ANN. § 2.725(a)–(b) (West 2020).
[97] *Id.* § 2.105(a).
[98] 369 F.3d 896 (5th Cir. 2004).
[99] *Id.* at 900.
[100] *Id.* at 902 (emphasis added) (footnotes omitted).

Plaintiff alleges that "Quammen, Siemens, and Cerner sold or leased *goods* to Debtor"[101] and "delivered *goods* that were unfit for Debtor's particular purpose."[102] Indeed, Plaintiff describes the custom computer software good that is the subject of this case:

> Debtor engaged in negotiations with Siemens for the purchase of a license to run a **comprehensive suite of computer software** that, as Debtor was led to understand, would facilitate the electronic processing and cataloguing of a significant swath of Debtor's day-to-day financials—patient, insurer, and government billing being chief among them—in a seamless integration with a corresponding software suite for Debtor's clinical operations.[103]

In response, Plaintiff only points out that the contract involved servicing and implementation terms that Defendants allegedly failed to undertake.[104] But the involvement of services in a contract does not defeat that this transaction predominantly involves the software good Soarian.[105] Accordingly, the applicable statute of limitations for Plaintiff's breach of warranty claims is 4 years.

To avoid the time-bar, Plaintiff argues that the "Siemens MSA's warranties expressly applied to Soarian throughout the 'Warranty Period' or, with respect to Siemens's/Cerner's service, for the duration of the parties' dealings."[106] Plaintiff invokes the § 2.725(b) statutory exception that extends a warranty claim when the warranty explicitly extends to future performance. However, courts construe § 2.725(b) "narrowly, with the emphasis on the term 'explicitly.' For an express warranty to meet the exception, it must make specific reference to a specific date in the future."[107] When a warranty provision explicitly warrants a good for some period of time, like 5 years, it falls within the § 2.725(b) exception and warranty claims accrue

---

[101] Dkt. No. 10 at 10, ¶ 33 (emphasis added).

[102] *Id.* at 11, ¶ 42 (emphasis added).

[103] *Id.* at 3, ¶ 9 (emphasis added).

[104] *See id.* at 6, ¶¶ 17–18.

[105] *See Propulsion Techs., Inc. v. Attwood Corp.*, 369 F.3d 896, 903 (5th Cir. 2004); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 786 n.17 (N.D. Tex. 2006) (collecting cases holding that software is a good within the definition of the Uniform Commercial Code).

[106] Dkt. No. 58 at 19 (citing Dkt. No. 10 at 5, ¶ 13).

[107] *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 548 (Tex. 1986) (citations omitted).

"not upon initial delivery, but when a reasonable buyer should have discovered any defects, up until the end of the five-year warranty period (when 'the time of such performance' expired)."[108]

To substantiate Plaintiff's argument that the warranty period extends throughout the "duration of the parties' dealings," Plaintiff first cites to paragraphs in the complaint that offer no support for Plaintiff's position, e.g., "Siemens warrants that each Application, when operated on the Technology as set forth in the applicable Technology Requirements Specification, will perform substantially in accordance with its Documentation during the applicable Warranty Period."[109] These allegations are of no help to Plaintiff because they do not explicitly set out a fixed warranty period. Plaintiff last argues that, "[t]o the extent the Court is inclined to consider [the agreement], it may find the definition of 'Warranty Period' in section 2. See Dkt # 50-1 at ~7."[110] However, Section 2 of the agreement merely states that the "'Warranty Period' means the period beginning on Delivery or another starting point specified in the applicable Part or amendment, and continuing for the duration of the support for the applicable Applications or Custom Programming."[111] The applicable "Warranty Period" is not at all explicit or fixed by this language. The "duration of the support" is unclear and potentially arguable.  Plaintiff cites no other part of the master services agreement that could explicitly define the warranty period or give more fixed meaning to the applicable "Warranty Period" or "duration of the support."[112] Accordingly, the Court agrees with Defendant Siemens that the breach of warranty claims accrued when "tender of delivery [was] made,"[113] i.e., in 2014.[114] The Court finds that the statute of limitations ran in 2018, before Debtor's bankruptcy or Plaintiff's complaint in 2019.

---

[108] *PPG Indus. v. JMB/Hous. Ctrs. Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004).
[109] Dkt. No. 10 at 5, ¶ 13.a.
[110] Dkt. No. 58 at 19 n.10.
[111] Dkt. No. 52-1 at 8, § 2.
[112] *See* Dkt. No. 58 at 19.
[113] TEX. BUS. & COM. CODE ANN. § 2.725(b) (West 2020).

This is not the end of the argument, however. Plaintiff first leans on the "ongoing harm" or "continuing violations doctrine" to suspend accrual of Plaintiff's claim.[115] "A claim for a continuing tort does not accrue until the defendant's wrongful conduct ceases. The doctrine of continuing tort, with its extension of accrual date, is rooted in a plaintiff's inability to know that the ongoing conduct is causing him injury."[116] The Texas Supreme Court has never fully adopted the continuing violations doctrine, but the Fifth Circuit believes the Texas Supreme Court would adopt the doctrine and this Court follows suit.[117] Citing Texas Courts of Appeals cases in discussing the doctrine, the Texas Supreme Court gave the examples that accrual of a plaintiff's claim for intentional infliction of emotional distress was suspended when a husband continually tried to coerce his wife into a sexual practice by asserting it was the only way their marriage could be saved,[118] and accrual was suspended in another case when a plaintiff continually took an injury-producing drug and did not become aware of his injury until he stopped.[119] However, a continuing violation that suspends accrual is the exception, and the general rule is that a claim accrues as soon as a plaintiff can seek a judicial remedy, even if damages continue to occur.[120]

Here, Plaintiff was keenly aware of the injury and could have sought a judicial remedy at the outset: "The wheels fell off Soarian's functionality . . . [i]t was, in short, a debacle from the word go."[121] The limitations period begins to run as soon as the defendant's conduct produces a

---

[114] Dkt. No. 50 at 12–13 (citing Dkt. No. 10 at 4, ¶ 12 ("The parties envisioned that Soarian's rollout would conclude just in time for Debtor's planned opening in August 2014") & *id.* at 7, ¶ 20 ("When the hospital finally opened its doors (often referred to as the 'go-live' date), much of Soarian malfunctioned; some parts of it— including key points in the physician-to-payer pipeline—did not function at all.")).

[115] Dkt. No. 58 at 17.

[116] *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017) (citation omitted).

[117] *Moon v. City of El Paso*, 906 F.3d 352, 357–58 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2616 (2019).

[118] *See Twyman v. Twyman*, 790 S.W.2d 819, 821 (Tex. App.—Austin 1990), *rev'd on other grounds*, 855 S.W.2d 619 (Tex. 1993).

[119] *See Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied.).

[120] *Moon*, 906 F.3d at 357.

[121] Dkt. No. 10 at 6, ¶ 15; *see also id.* at 8, ¶ 23 ("Throughout its operational period, Debtor continually notified Siemens of defects.").

legal injury to the plaintiff, however slight.[122] The Court holds that the continuing violations doctrine does not suspend accrual of Plaintiff's claims because Plaintiff was aware that Soarian's delivery in 2014[123] was causing injury and simply did not bring suit. Unlike the cases in which the Plaintiff was unable to know of the injury, Plaintiff here was well-aware of the injury.

Plaintiff next leans on the discovery rule and Defendant's alleged fraudulent concealment to toll accrual of the statute of limitations.[124] "The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action."[125] "In order to raise the discovery rule in federal court, the plaintiff need not expressly plead the rule; it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories upon which the complaint is based."[126] The discovery rule is limited, however, and "the limitations clock is running, even if the claimant does not yet know the specific cause of the injury, the party responsible for it, the full extent of it, or the chances of avoiding it."[127]

Defendant Siemens argues that Plaintiff's allegations "confirm Debtor had actual knowledge (or at a minimum, should have known) of the allegations giving rise to each of her claims by 2014."[128] Plaintiff responds only that "the Court can infer from the Complaint that the full extent of Soarian's failures eluded Debtor well into the limitations period, particularly in light of allegations of Defendants continued false assurances that they would promptly address

---

[122] *Childs v. Haussecker*, 974 S.W.2d 31, 41 n.7 (Tex. 1998).

[123] *See* Dkt. No. 10 at 7, ¶ 20 ("When the hospital finally opened its doors (often referred to as the 'go-live' date), much of Soarian malfunctioned.").

[124] Dkt. No. 58 at 19–20, §§ 3–4.

[125] *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996); *accord Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018).

[126] *Askanase v. Fatjo*, 828 F. Supp. 465, 470 (S.D. Tex. 1993) (Crone, J.) (citing *Simpson v. James*, 903 F.2d 372, 375 (5th Cir. 1990)).

[127] *PPG Indus. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004) (cleaned up); *cf. Crisman v. Odeco, Inc.*, 932 F.2d 413, 415 (5th Cir. 1991) ("[W]hen an event occurs that should put a plaintiff on notice to check for injury, this is sufficient to start the prescriptive period running.").

[128] Dkt. No. 50 at 14–15 (citing Dkt. No. 10, ¶¶ 15–17, 20, 22–23).

and fix Soarian's dis- and non-function."[129] The Court agrees with Siemens. Plaintiff seems to argue that, because Plaintiff was not aware of the full extent of injury, the limitations period is tolled, but this argument is foreclosed by Texas Supreme Court precedent.  The plaintiff in *Velsicol Chemical Corp. v. Winograd*, argued that, although she knew of the presence of the contaminant chlordane in the interior of her apartment, her cause of action for its presence did not accrue until years *after* she first became aware of the chlordane, when it reached "elevated interior concentrations amounting to 'contamination.'"[130] The Texas Supreme Court rejected this argument, holding that "the injuries of which [plaintiff] complains were not inherently undiscoverable and thus the discovery rule does not save those claims from limitations."[131] Similarly here, Plaintiff alleges that "[t]he wheels fell off Soarian's functionality and Quammen's implementation while the ink on the Siemens MSA and Quammen MSA was still wet. It was, in short, a debacle from the word go."[132] Plaintiff also alleges that "[b]ugs glitches, and outright system failures across the board plagued Soarian from 2014 until Debtor discharged its patients in 2018."[133] Even if Plaintiff was unaware of the full extent of injury, Plaintiff should have known of the facts giving rise to the cause of action upon delivery of Soarian in 2014. Furthermore, "[t]he discovery rule applies only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable. An injury is inherently undiscoverable if by its nature, it is unlikely to be discovered within the prescribed limitations period despite due diligence."[134] Soarian either functioned as intended or it did not; Plaintiff's injury was not

---

[129] Dkt. No. 58 at 20 (citing Dkt. No. 10, ¶¶ 18, 25).
[130] 956 S.W.2d 529, 531 (Tex. 1997).
[131] *Id.*
[132] Dkt. No. 10 at 6, ¶ 15.
[133] Dkt. No. 10 at 7, ¶ 20.
[134] *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011) (quotations omitted).

inherently undiscoverable despite due diligence. The Court holds that the discovery rule is inapplicable to Plaintiff's claims for breach of warranty.

Plaintiff finally argues that fraudulent concealment tolls accrual of the statute of limitations.[135] The Court disagrees. "[F]raudulent concealment is a fact-specific equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence."[136] "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action."[137] Similar to the analysis immediately above, even if Defendants concealed facts, Plaintiff was well-aware of "the existence of a cause of action"[138] because "[t]hroughout its operational period, Debtor continually notified Siemens of defects [in Soarian] and even began hiring third-parties to attempt workarounds."[139]

The Court holds that the continuing violations doctrine, the discovery rule, and fraudulent concealment do not toll the statute of limitations, which accrued in 2014 and ran in 2018.[140] Debtor did not file bankruptcy and Plaintiff did not file her complaint until 2019.[141] The Court finds that the statute of limitations time-bars Plaintiff's breach of warranty claims. Accordingly, the Court **GRANTS** Siemens's motion to dismiss[142] to the extent it seeks to dismiss Plaintiff's

---

[135] Dkt. No. 58 at 20, § 4.
[136] *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015).
[137] *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983), *quoted in Valdez*, 465 S.W.3d at 229.
[138] *Valdez*, 465 S.W.3d at 229.
[139] Dkt. No. 10 at 8, ¶ 23.
[140] *But see Valdez*, 465 S.W.3d at 229 (holding that only the discovery rule and fraudulent concealment toll the statute of limitations).
[141] Dkt. No. 10 at 3, ¶ 7.
[142] Dkt. No. 50.

claims for breach of express warranties (count 2) and breach of implied warranties (count 3). Plaintiff's counts 2 and 3 are **DISMISSED** in their entirety.

> 3. *Counts 5–6: Fraud Claim Against all Defendants and Fraudulent Inducement Claim Against Siemens and Quammen*

The Court next turns to Plaintiff's claim for fraudulent inducement, because Plaintiff argues that the "economic loss rule is inapplicable . . . because it does not apply where, as here, a party seeks to rescind the contract that purportedly subsumes the tortiously breached duties."[143] Plaintiff is correct that Defendants may not rely on the economic loss rule to dismiss noncontractual claims where the contract was procured by fraud.[144] Plaintiff is also correct that she may rescind a contract induced by fraud,[145] which eliminates contractual duties.[146] Therefore, a threshold evaluation for whether some of Plaintiff's claims survive a motion to dismiss is whether Plaintiff's fraudulent inducement claim survives. "Fraudulent inducement 'is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties.'"[147] Claims for

---

[143] Dkt. No. 58 at 21.

[144] *See Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 276 (5th Cir. 1989) (quoting *L & B Oil Co. v. Arnold*, 620 S.W.2d 191, 193 (Tex. Civ. App.—Waco 1981, writ dism'd w.o.j.)); *In re Technicool Sys.*, 594 B.R. 663, 669 (Bankr. S.D. Tex. 2018) (citing *Formosa Plastics Corp. USA v. Presidio Engr's & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998)) ("However, an exception to the economic loss doctrine exists which allows for extra-contractual liability when a plaintiff proves that a party violated its duty to not utilize fraudulent misrepresentations in the procurement of contracts.").

[145] *Bailey v. Bailey*, 731 F. App'x 272, 280 (5th Cir. 2018) ("[T]he remedies for fraudulent inducement are either rescission of the contract or affirming the contract and recovering for damages flowing from the fraud.").

[146] *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 509 (Tex. App.—Fort Worth 2012, no pet.) ("Upon rescission, the rights and liabilities of the parties are extinguished; any consideration paid is returned, together with such further special damage or expense as may have been reasonably incurred by the party wronged; and the parties are restored to their respective positions as if no contract had ever existed.").

[147] *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 582 (N.D. Tex. 2013) (quoting *Bohnsack v. Varco, LP*, 668 F.3d 262, 277 (5th Cir. 2012)).

fraud and fraudulent inducement are therefore subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement, so the Court will consider the claims together.[148]

Federal Rule of Civil Procedure 9(b) requires that Plaintiffs, "[i]n alleging fraud or mistake, . . . must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The Fifth Circuit has interpreted Federal Rule of Civil Procedure 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. In short, plaintiffs must plead enough facts to illustrate the who, what, when, where, why and how of the alleged fraud."[149] This strict requirement is "a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. [Courts] apply Rule 9(b) to fraud complaints with bite and without apology."[150] Furthermore, to state a claim for fraud under Texas law, Plaintiff must allege:

> (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.[151]

"A false representation is material if a reasonable person would attach importance to and be induced to act on the information."[152] A speaker "acts recklessly if he makes representations

---

[148] *See id.*

[149] *Schott, Tr. for Estate of InforMD, LLC v. Massengale*, No. CV 18-759-JWD-RLB, 2019 WL 4738795, at *13 (M.D. La. Sept. 27, 2019) (internal quotation marks omitted) (quoting *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) & *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)).

[150] *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (internal quotation marks omitted).

[151] *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

[152] *Id.* (citing *Citizens Nat'l Bank v. Allen Rae Invs.*, 142 S.W.3d 459, 478–79 (Tex.App.—Fort Worth 2004, no pet.)); *see Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337–38 (Tex. 2011) (discussing the nuances of whether an opinion can constitute a material misrepresentation and concluding that it can particularly when one party has special or superior knowledge).

without any knowledge of the truth and as a positive assertion. In other words, a representation is recklessly made if the speaker knows that he does not have sufficient information or basis to support it, or if he realizes that he does not know whether or not the statement is true."[153] Lastly, a speaker intends the plaintiff to act on the misrepresentation if the representations were made to "induce reliance" or influence the recipient.[154] However, Plaintiff argues for a looser pleading standard, citing authorities from bankruptcy courts in Delaware, Maryland, and the Northern District of Texas.[155] These authorities are nonbinding[156] and questionable at best.[157] The pleading requirements of Rule 9(b) may be relaxed when "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge," but the complaint must still set forth a factual basis for alleging fraud.[158]

Defendant Siemens first argues that Plaintiff's "allegations confirm Debtor had actual knowledge (or at a minimum, should have known) of the allegations giving rise to each of her claims by 2014."[159] Plaintiff admits that the alleged fraud was perpetrated "beginning in mid-2013" through 2018.[160] Texas law time-bars claims for fraud, fraudulent inducement, and

---

[153] *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 527 (Tex. 1998) (internal quotation marks and citations omitted); *see Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (holding that a plaintiff must plead "specific facts that support an inference of fraud").

[154] *Ernst & Young, L.L.P.*, 51 S.W.3d at 578.

[155] Dkt. No. 58 at 4 (citing *In re Abell*, 549 B.R. 631, 647 (Bankr. D. Md. 2016); *In re Aphton Corp.*, 423 B.R. 76, 85 (Bankr. D. Del. 2010) ("A trustee is generally afforded greater liberality in pleading fraud, since he is a third-party outsider to the debtor's transactions."); *In re Hunt*, 136 B.R. 437, 452 (Bankr. N.D. Tex. 1991) (applying a "less stringent standard" because "the third party trustee is generally pleading fraud on second-hand information"), *abrogated on other grounds by In re CompuAdd Corp.*, 137 F.3d 880 (5th Cir. 1998).

[156] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 LAWRENCE B. SOLUM, MOORE'S FEDERAL PRACTICE - CIVIL § 134.02[1][d] (3d ed. 2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

[157] *See In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 128 (Bankr. S.D. Tex. 2010) ("While this Court understands the relaxed Rule 9(b) exception and the rationale set forth by the Delaware bankruptcy courts, this Court declines to apply that standard for the following reasons: (1) the Fifth Circuit reads Rule 9(b) strictly; and (2) a Chapter 7 trustee has many tools in his tool belt that would enable him to gather the requisite knowledge to file a fraudulent transfer complaint without having to rely on a more relaxed standard of pleading.").

[158] *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (citing *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

[159] Dkt. No. 50 at 14.

[160] Dkt. No. 58 at 11.

fraudulent concealment after 4 years.[161] However, "limitations does not start to run until the fraud is discovered or the exercise of reasonable diligence would discover it."[162] This means that "if the plaintiff has 'actual knowledge ... of injury-causing conduct,' then this 'starts the clock on the limitations period' '[i]rrespective of the potential effect of fraudulent concealment.'"[163] Plaintiff's central allegation of Siemens's fraud is that Siemens allegedly stated, in mid-2013, that the Soarian implementation process would be a "relatively expedient and hands-off procedure for Debtor and its personnel, one that would require Debtor mostly to participate in training and not in the actual build-in of Soarian at the hospital, and all with minimal overruns and added costs" even though Siemens "had a history of working with Quammen" and knew of Quammen's "history of cost overruns and delays at its project sites."[164] Plaintiff also alleges that Siemens "failed to provide the on-site oversight that it promised to undertake with respect to Quammen's build-in efforts,"[165] but Plaintiff does not allege when and where this promise was made, or that, when Defendant made this promise, it was made knowingly or recklessly falsely.[166]

But even assuming that Plaintiff has stated a claim for fraud and fraudulent inducement, the claims accrued no later than "July/August 2014" when the hospital opened.[167] Plaintiff alleges that "[t]he wheels fell off Soarian's functionality and Quammen's implementation while

---

[161] TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (West 2020); *In re Travelers Prop. Cas. Co. of Am.*, 485 S.W.3d 921, 926 (Tex. App.—Dallas 2016, no pet.) ("A claim for fraudulent inducement accrues on the date the allegedly false representations were made."); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

[162] *Hooks v. Samson Lone Star, LP*, 457 S.W.3d 52, 57 (Tex. 2015).

[163] *Id.* at 59 (alteration in original) (quoting *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 209 (Tex. 2011)).

[164] Dkt. No. 10, ¶¶ 10, 18.

[165] *Id.* at 6, ¶ 17.

[166] *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 527 (Tex. 1998) (discussing this element of pleading fraud).

[167] Dkt. No. 10 at 3, ¶ 8; *cf. RA Glob. Servs. v. Avicenna Overseas Corp.*, 817 F. Supp. 2d 274, 283 (S.D.N.Y. 2011) (citing *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226–27 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Consequently, unless a deferred accrual rule applies, a fraudulent inducement claim will accrue no later than the date that the induced agreement was executed.").

the ink on the Siemens MSA and Quammen MSA was still wet. It was, in short, a debacle from the word go."[168] "Throughout its operational period, Debtor continually notified Siemens of defects."[169] Plaintiff knew or should have known that Siemens's representations were false when Quammen delayed commencement of work for five or six months and Siemens failed to correct issues, in Plaintiff's words, "during 2014."[170] In short, certainly no later than the end of 2014, Plaintiff was "apprised of facts, conditions, and circumstances sufficient to cause a reasonable person to make inquiry that would lead to the discovery of the concealed cause of action."[171] The Court holds that Plaintiff's cause of action for fraud and fraudulent concealment accrued in 2014 and ran in 2018, before Debtor's bankruptcy or Plaintiff's complaint in 2019. To the extent Plaintiff argues that limitations-tolling doctrines save Plaintiff's claim,[172] the Court's holding is consistent with the analysis in Section II.d.2, *supra*, that limitations-tolling doctrines do not save Plaintiff's claims.

Even if Plaintiff stated a timely claim for fraud against Defendant Siemens, the Court would dismiss Plaintiff's fraud claim against Defendant Cerner for an independent reason. Against Cerner specifically, Plaintiff only alleges that, after Siemens's assignment of the master services agreement to Cerner in 2015, Cerner perpetuated remediation payments for Soarian fixes and "Siemens knew that Cerner's [sic] was perpetuating Siemens's own false, misleading, or negligent misstatements regarding the necessity and adequacy of the so-called 'remediation' efforts taken by Siemens/Cerner and paid for by Debtor."[173] Plaintiff additionally alleges that "Siemens and Cerner also made misrepresentations to Debtor regarding their ability to remediate

---

[168] *Id.* at 6, ¶ 15.
[169] *Id.* at 8, ¶ 23.
[170] *See id.* at 6, ¶¶ 16–17.
[171] *Hooks v. Samson Lone Star, LP*, 457 S.W.3d 52, 58 n.8 (Tex. 2015) (quoting *Etan Indus. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011)).
[172] *See* Dkt. No. 58 at 17–20.
[173] Dkt. No. 10 at 8–9, ¶¶ 23, 25.

the innumerable issues plaguing the Soarian software following the opening of Debtor's hospital."[174] Plaintiff makes no other allegations except for impermissibly conclusory allegations like "[w]hen Cerner, Quammen, and Siemens made their material representations to Debtor, they knew their representations were false or made the representations recklessly, as a positive assertion, and without knowledge of those representations' truth,"[175] which the Court will disregard.[176] Irrespective of whether Cerner was "perpetuating" Siemens's misrepresentations, Plaintiff does not allege that *Cerner* made a material false statement knowingly or recklessly that Debtor relied upon to its detriment. Even accepting Plaintiff's allegation that Cerner misrepresented its ability to remediate Soarian, Plaintiff does not allege when and where the statements were made or why the statements were knowingly or recklessly false when made. Plaintiff's fraud claims against Defendant Cerner cannot stand for this independent reason, even if they were timely.

Accordingly, the Court **GRANTS** Defendants' motions to dismiss to the extent they seek to dismiss Plaintiff's claims for fraud (count 5) and fraudulent inducement (count 6). Plaintiff's counts 5 and 6 are **DISMISSED** with respect to Defendants Cerner and Siemens.

### 4. *Counts 4, and 7–8: Negligence, Negligent Misrepresentation, and Negligent Hiring Claims Against all Defendants*

Defendants move to dismiss Plaintiff's negligence-related claims as barred by the economic loss rule.[177] Plaintiff first argues the economic loss rule is inapplicable where a fraudulent inducement claim survives and the Plaintiff seeks to rescind the contract,[178] but the Court has dismissed Plaintiff's fraud-related claims. Plaintiff next argues that Defendants are

---

[174] *Id.* at 12, ¶ 50.
[175] *Id.* at 12–13, ¶¶ 50–58.
[176] *See supra* notes 41–43.
[177] Dkt. No. 49 at 13–14; Dkt. No. 50 at 15–18.
[178] Dkt. No. 58 at 21.

liable for breaches independent of their contractual obligations, and for causing injuries independent of contract, such that the economic loss rule does not bar Plaintiff's claims.[179]

"As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort."[180] Therefore, the economic loss rule under Texas law "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy."[181] "The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."[182] "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking *and* the harm suffered is not merely the economic loss of a contractual benefit."[183] The Texas Supreme Court set forth the following guidelines:

> If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.[184]

---

[179] *Id.* at 21–23.

[180] *Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 527 (5th Cir. 1996) (quotation omitted).

[181] *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007); *see LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235–36 (Tex. 2014).

[182] *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)); *see Lamar Homes*, 242 S.W.3d at 12–13 ("In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence.").

[183] *Chapman Custom Homes*, 445 S.W.3d at 718 (emphasis added).

[184] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998) (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)).

One Northern District of Texas opinion explained, "[i]n determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself."[185] "The burden is on the plaintiff to establish evidence of an independent injury."[186] "The [economic loss] rule is applicable to a claim for negligent misrepresentation in Texas."[187] The rule is also applicable to negligence and negligence-related claims[188] including negligent hiring.[189] The economic loss rule does not apply when the "duty was independent of any obligation in the [contract], and the alleged damages caused by the breach of that duty extended beyond the economic loss of any anticipated benefit under the . . . contract,"[190] such as misappropriation of trade secrets even when the parties are bound by a contractual confidentiality agreement.[191]

Plaintiff first argues that she has alleged violation of duties independent of contract.[192] Plaintiff points to her allegation that "Siemens, meanwhile, failed to provide the on-site oversight that it promised to undertake with respect to Quammen's build-in efforts. In any other software-rollout scenario involving a software developer such as Siemens overseeing at arms-length another entity's implementation of its product, the developer would raise red flags and report

---

[185] *Stanley Indus. of S. Fla., Inc. v. J.C. Penney Co.*, No. 3:05-CV-2499L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006).

[186] *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-CV-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (citing *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 302 (Tex. App.—Dallas 2009, no pet.) & *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

[187] *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) & *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex. 1991)).

[188] *Lamar Homes*, 242 S.W.3d at 12; *Garcia v. Loancare, LLC*, No. 3:17-CV-00343, 2018 WL 3614813, at *7–8 (S.D. Tex. June 25, 2018) (Edison, J.); *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 931 (N.D. Tex. 2014).

[189] *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 289 (Tex. App.—Dallas 2015, no pet.).

[190] *Hilburn v. Storage Tr. Props., LP*, 586 S.W.3d 501, 508 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

[191] *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 268–69 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd).

[192] Dkt. No. 58 at 22.

concerns to the customer."[193] Plaintiff's argument is defeated by her own allegation: the oversight that Siemens "*promised to undertake*" in implementing Soarian. Siemens promised to undertake Soarian build-in oversight in the contract.[194] Plaintiff cites no authority for her bizarre implication that software developers have free-floating legal duties to report ostensibly poor software implementation to the customer.[195]

Plaintiff next argues that "Siemens also owed an independent duty to disclose to Debtor that Quammen had a notorious track record for cost overruns and delays—an obligation that did not arise by virtue of contract."[196] The case that Plaintiff cites for this proposition is *Hilburn v. Storage Trust Properties, LP*.[197] In that case, the plaintiff George Hilburn rented a storage unit from the defendant.[198] The storage unit flooded and damaged the plaintiff's property in May 2015.[199] After the plaintiff paid rent for June 2015, the business began to clear out the storage units. During telephone calls in June, representatives of the storage business told Mr. Hilburn not to worry and that he had plenty of time to clear out his units.[200] Nevertheless, the storage business disposed of the plaintiff's property.[201] Mr. Hilburn brought numerous claims, including as relevant here claims for waiver, estoppel, and promissory estoppel.[202] The Texas Court of Appeals refused to dismiss the plaintiff's claims under the economic loss rule; holding that Mr. Hilburn had alleged the defendant storage business's promise not to remove his possessions and the defendant's tangible action inconsistent with its intention to clear out the storage units—

---

[193] Dkt. No. 10 at 6, ¶ 17.
[194] *E.g.*, Dkt. No. 52-1 at 128, § 34.5.1.
[195] *See* Dkt. No. 58 at 22 ("Siemens owed independent duties not to negligently sit idly by while a third-party helped botch a software rollout that would be foreseeably devastating for a hospital."). The case Plaintiff does cite, *Eagle Oil & Gas Co.*, 549 S.W.3d at 268, only describes a "duty not to breach confidences," or misappropriate trade secrets, not a duty to rescue supposedly negligent project implementation.
[196] Dkt. No. 58 at 22 (citing Dkt. No. 10, ¶¶ 18, 46–49, 68–76).
[197] 586 S.W.3d 501 (Tex. App.—Houston [14th Dist.] 2019, no pet.).
[198] *Id.* at 504.
[199] *Id.*
[200] *Id.* at 508.
[201] *Id.*
[202] *Id.* at 509.

accepting rent after the storage units had flooded.[203] The court held that "[t]hese contentions are not related to Storage Trust's failure to perform a contractual duty—they are common law duties that arose from renunciation of a purported known right (clearing the storage units), inducing Hilburn not to move his property by telling him he did not need to worry, and promising not to dispose of his property."[204] The court concluded that the plaintiff's "claims are based on duties that arose from Storage Trust's post-contractual statements and actions independent of any obligation undertaken by Storage Trust in the lease agreements," so the economic loss rule did not bar the plaintiff's waiver, estoppel, or promissory estoppel claims.[205] Plaintiff in this case relies on this conclusion for the proposition that certain promises may be independent of contractual duty.[206] However, the *Hilburn* case says nothing about *pre*-contractual negotiations or promises or any general duty to disclose unfavorable information about a contractor. A party cannot be liable for a failure to disclose unfavorable information unless that party had a freestanding duty to disclose, and "[g]enerally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship."[207]

> But a duty to disclose may arise in situations not involving a confidential or fiduciary relationship. In particular, a duty to disclose may also arise: (1) when one voluntarily discloses information, in which case the whole truth must be disclosed; (2) when one makes a representation, in which case new information must be disclosed when the new information makes the earlier representation misleading or untrue; and (3) when one makes a partial disclosure and conveys a false impression.[208]

The Court holds that Plaintiff has alleged a breach of this duty of disclosure. Plaintiff specifically alleged that

---

[203] *Id.* at 510.
[204] *Id.*
[205] *Id.*
[206] Dkt. No. 58 at 22.
[207] *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).
[208] *JSC Nizhnedneprovsky Tube Rolling Plant v. United Res., LP*, No. 13-15-00151-CV, 2016 WL 8921926, at *10 (Tex. App.—Corpus Christi Dec. 21, 2016, no pet.).

Siemens also represented the software to be essentially self-administering following a rollout period during which Quammen, a Florida-based entity that Siemens suggested Debtor hire to assist with the (contemplated) 10-month implementation process, was tasked with tailoring Soarian to Debtor's facility and specific needs. Siemens and Quammen also misrepresented the implementation process as a relatively expedient and hands-off procedure for Debtor and its personnel, one that would require Debtor mostly to participate in training and not in the actual build-in of Soarian at the hospital, and all with minimal overruns and added costs.[209]

Plaintiff also specifically alleged that "Siemens, which had a history of working with Quammen, should have disclosed to Debtor that Quammen has a history of cost overruns and delays at its project sites."[210] Indeed, "it was not until April 2014, or seven months after Debtor executed the Quammen MSA, that Quammen's first employees arrived at Debtor's facility to begin implementation. The 10-month staged process . . . was suddenly sandwiched into what would become a four-month frenzy."[211] The Court finds that these allegations are sufficient to invoke the duty of disclosure under the first or third situations just set forth, because Plaintiff has sufficiently alleged that Defendant Siemens failed to convey the whole truth about Quammen or made a partial disclosure about Quammen that conveyed a false impression. "[U]nder both New York and Texas common law fraud, deceptive half-truths or technically correct partial disclosures that convey a false impression are actionable" independent of contract.[212] The Court agrees with Plaintiff that she has alleged breach of a duty independent of contract with respect to Defendant Siemens.

However, as with Plaintiff's fraud claims,[213] Plaintiff's allegations against Defendant Cerner are inadequate. Again, Plaintiff must make an allegation of a duty breached independent

---

[209] Dkt. No. 10 at 4, ¶ 10.
[210] *Id.* at 6, ¶ 18.
[211] *Id.* ¶ 16.
[212] *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 547 (S.D. Tex. 2011) (Harmon, J.).
[213] *See supra* text accompanying notes 173–176.

from any duty imposed by contract to avoid the economic loss rule.[214] Plaintiff only alleges that Cerner perpetuated the "predatory use" of the *agreement's* remediation provisions[215] and misrepresented its ability to remediate the Soarian issues.[216] However, any promises or representations Cerner made about its future ability to remediate Soarian issues do not constitute negligent misrepresentations and are subsumed by Plaintiff's breach of contract claim.[217] All of Cerner's alleged duties sound in contract, not in tort, and Plaintiff has failed to allege Cerner's independent duty.

Even if Plaintiff has alleged independent duties for all Defendants, Plaintiff must also plead independent injuries to overcome the economic loss rule.[218] "[A] duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim."[219] The independent injuries must be distinct from the "benefit of the bargain."[220] "When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."[221] Plaintiff cites to only one allegation to establish independent injury: "The issues with Soarian caused yet millions more in damages resulting from things like (1) physician turnover; (2) loss of local goodwill; and (3) exhaustion of credit lines and reduced borrowing

---

[214] *See supra* note 190.
[215] Dkt. No. 10 at 8–9, ¶¶ 23–25.
[216] *Id.* at 12, ¶ 50.
[217] *See First Bank v. Brumitt*, 564 S.W.3d 491, 495–96 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that the common law duty not to make negligent misrepresentations does not extend to promises of future conduct and sounds as a breach of contract claim, not a tort claim).
[218] *See supra* notes 183–185.
[219] *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-CV-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (quoting *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) & citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)); *accord Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, No. CIV.A.H-09-3828, 2010 WL 1996596, at *7 (S.D. Tex. May 17, 2010) (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996)) ("[T]ort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach of contract claim.").
[220] *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998).
[221] *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

base on increasingly unfavorable terms."[222] Plaintiff also cites two federal district court cases, but the cases are nonbinding and unpersuasive.[223] In *Barnett v. American General Life Insurance Co.*, the Western District of Texas held that the money the plaintiff had to pay for professional advice under a contract was separate under the economic loss rule from the money the plaintiff would owe to the Internal Revenue Service, but also implied that damage to "credit ratings" may also be a separate injury in a brief end-of-paragraph sentence without explaining why.[224] The *ratio decidendi* of that case was the obvious separateness of contractual fees and IRS payments, not reduced creditworthiness, and the Court is unpersuaded that damaged credit is necessarily an injury separate from contract. In *Transverse, LLC v. Iowa Wireless Service, LLC*, the Western District of Texas simply found that the plaintiff raised a genuine issue of material fact such that summary judgment would be denied in relation to the economic loss rule without explaining why.[225]

Here, Plaintiff alleges damages arising from "issues with Soarian," which were the subject of the master services agreements, particularly the remediation provisions, not independent injuries separate from contract.[226] Indeed, Plaintiff betrays that there is no independent injury in her complaint. For her breach of contract claim, Plaintiff alleges "Debtor was injured as a result [of the breach of contract], suffering actual damages of at least $93 million, plus pre-judgment and post-judgment interest, court costs, and attorneys' fees."[227] Plaintiff then makes the same claim for damages of "at least $93 million" in her negligence, fraud, fraudulent inducement, negligent misrepresentation, and negligent hiring causes of action

---

[222] Dkt. No. 58 at 23 (quoting Dkt. No. 10 at 7, ¶ 21).
[223] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 LAWRENCE B. SOLUM, MOORE'S FEDERAL PRACTICE - CIVIL § 134.02[1][d] (3d ed. 2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").
[224] No. A-09-CA-935-SS, 2010 WL 11566353, at *7 (W.D. Tex. Oct. 7, 2010).
[225] No. A-10-CV-517-LY, 2012 WL 12882856, at *2–3 (W.D. Tex. Sept. 24, 2012).
[226] Dkt. No. 10 at 7, ¶ 21.
[227] *Id.* at 10, ¶ 30.

(counts 4–8).[228] Plaintiff's inability to differentiate the injury between the breach of contract claim and the myriad tort claims indicate that all supposed tort injuries are actually economic losses that go "to the subject of [the] contract itself."[229] Plaintiff's allegations of injury to business, good will, and credit are merely consequential damages from the breach of contract. "Contract damages" include consequential damages,[230] which are those "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act," such as lost good will and business profits.[231] In an action for breach of contract, Plaintiff may generally recover consequential damages resulting from the breach and damages to restore Plaintiff to the economic position that the injured party would have enjoyed had the contract been performed.[232] Plaintiff's single allegation of damages flowing indirectly as a consequence of the alleged breach of contract is insufficient to establish an independent injury. The Court holds that "the nature of the plaintiff's loss" sounds only in contract.[233]

Having found that Plaintiff does not allege an independent duty for Defendant Cerner, and does not allege injuries independent from the economic loss to the subject of the contract itself, the Court **GRANTS** Defendants' motions to dismiss[234] to the extent they seek to dismiss Plaintiff's negligence, negligent misrepresentation, and negligent hiring claims. Plaintiff's counts 4, 7, and 8 are **DISMISSED** with respect to Defendants Siemens and Cerner.

   5.   *Count 9: Unjust Enrichment Claim Against all Defendants*

---

[228] *Id.* ¶¶ 49, 57, 66, 73, 76.

[229] *Polo Towne Crossing Plano TX, L.P. v. Wilson*, No. 4:04CV308, 2006 WL 8443021, at *5 (E.D. Tex. Aug. 30, 2006) (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)).

[230] *Contract Damages*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[231] *Damages*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[232] *AZZ Inc. v. Morgan*, 462 S.W.3d 284, 289 (Tex. App.—Fort Worth 2015, no pet.); *cf. Bohnsack v. Varco, L.P.*, 668 F.3d 262, 275–77 (5th Cir. 2012) (discussing damages). *But see* Section II.d.9, *infra* (dismissing Plaintiff's claims for consequential damages to the extent they are limited by contract).

[233] *DeLanney*, 809 S.W.2d at 494; *see Shopoff Advisors, LP v. Atrium Circle, GP*, 596 S.W.3d 894, 909–10 (Tex. App.—San Antonio 2019, no pet.).

[234] Dkt. Nos. 49–50.

Defendant Siemens moves to dismiss Plaintiff's claim for unjust enrichment, arguing that it is not an independent cause of action.[235] "[T]o the extent that [a plaintiff asserts] a cause of action for unjust enrichment, it also fails as a matter of law because it is not an independent cause of action, but rather 'characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay.'"[236] At least one Texas federal court has followed this precedent to dismiss a claim for unjust enrichment because it is not a claim on which relief can be granted.[237] Plaintiff has no response to this argument.[238] Accordingly, the Court agrees with Defendant that this is an independent reason to dismiss Plaintiff's claim for unjust enrichment.

In addition, Defendants move to dismiss Plaintiff's unjust enrichment claim as barred by an express contract.[239] An unjust enrichment claim is properly dismissed "when a valid, express contract governing the subject matter of the dispute exists."[240] Plaintiff first responds that she may rescind the contract in the face of fraudulent inducement,[241] but the Court has dismissed that claim. Plaintiff next argues that she may plead claims in the alternative.[242] Although the Court acknowledges that pleading even inconsistent theories in the alternative is permissible under Federal Rule of Civil Procedure 8(d)(3),[243] "because Plaintiff[] do[es] not argue that the agreements are somehow invalid or otherwise unenforceable, Plaintiff[] [is] not permitted to

---

[235] Dkt. No. 50 at 24, § I.

[236] *Spellmann v. Love*, 534 S.W.3d 685, 693 (Tex. App.—Corpus Christi 2017, no pet.) (quoting *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 709 n.4 (Tex. App.—Corpus Christi 2006, pet. denied).

[237] *Redwood Resort Props., LLC v. Holmes Co. Ltd.*, No. CIV.A.3:06CV1022 D, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006).

[238] *See* Dkt. No. 58 at 13–14.

[239] Dkt. No. 49 at 14; Dkt. No. 50 at 19–20.

[240] *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001); *accord Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 112 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("[U]njust enrichment is unavailable when a valid, express contract governing the subject matter of the dispute exists.").

[241] Dkt. No. 58 at 14.

[242] *Id.*

[243] *Gordon v. Sig Sauer, Inc.*, No. CV H-19-585, 2019 WL 4572799, at *15–16 (S.D. Tex. Sept. 20, 2019) (Rosenthal, C.J.) (refusing to dismiss an unjust enrichment claim).

plead unjust enrichment as an alternative to breach of contract claims."[244] Accordingly, the Court **GRANTS** Defendants' motions to dismiss[245] to the extent they seek to dismiss Plaintiff's claim for unjust enrichment. Plaintiff's count 9 is **DISMISSED**.

> 6. *Counts 10–13: Avoidance of Fraudulent Transfer under 11 U.S.C. §§ 544, 548(a)(1)(B), 550, and Tex. Bus. & Com. Code §§ 24.005(a)(2), 24.006(a) Against Siemens and Cerner*

Defendant Cerner first argues that Plaintiff's allegations of fraudulent transfer must meet the "particularity required" by Federal Rule of Civil Procedure 9(b).[246] However, the case Cerner cites for its position actually holds, only in the context of the Texas Uniform Fraudulent Transfer Act, that a fraudulent transfer claim must "allege actual intent" for Rule 9(b) to attach.[247] Where a claim is based on constructive fraud, "the heightened pleading standards of Rule 9(b) do not apply."[248] One court described the relevant difference as: "If the fraudulent transfer statute Plaintiffs want the Court to apply requires intent to defraud, the enhanced pleading requirements of Rule 9(b) apply; if the statute allows for fraudulent transfer without intent to defraud, however, only the general pleading rules of Rule 8(a) must be satisfied."[249] The same court held that claims under Texas Business and Commerce Code §§ 24.005(a)(2) and 24.006, the precise statutes Plaintiff invokes here, need to meet only the general pleading rules of Federal Rule of Civil Procedure 8(a), not 9(b).[250] Regardless, Cerner does not clarify for the Court whether it perceives Plaintiff's allegations of fraudulent transfer to allege actual intent or constructive

---

[244] *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 984 (S.D. Cal. 2014); *accord Dick v. Colorado Hous. Enters.*, 780 F. App'x 121, 126 (5th Cir. 2019) ("The plaintiff argues she is entitled to plead in the alternative, but she failed to plead facts sufficient to state an alternative theory of unjust enrichment. The complaint never alleges, even in the alternative, that there was no valid express contract to govern the parties' dealings.").

[245] Dkt. Nos. 49–50.

[246] Dkt. No. 49 at 4.

[247] *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 364–65 & n.9 (Bankr. S.D. Tex. 2009).

[248] *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 848 (W.D. Tex. 2017).

[249] *E. Poultry Distribs., Inc. v. Puez*, No. 3:00-CV-1578-M, 2001 U.S. Dist. LEXIS 27007, at *6 (N.D. Tex. Dec. 3, 2001).

[250] *Id.*

fraud, or argue that Plaintiff's avoidance of fraudulent transfer claims should be dismissed for failure to meet the Rule 9(b) standard.[251] Accordingly, to the extent Defendant seeks to dismiss Plaintiff's avoidance of fraudulent transfer claims for their failure to meet the heightened fraud pleading standard, the Court is unpersuaded that the higher pleading standard applies.

Cerner also moves to dismiss Plaintiff's counts 10, 11, and 12 because "the Complaint fails to assert what transfers were made and what amounts are actually at issue for these claims."[252] The Court disagrees. Plaintiff specifically alleges what transfers and amounts are at issue:

> 19. This implementation-stage neglect by Siemens and deficient performance by Quammen certainly enriched those two entities, which reaped an estimated $2.2 million in remediation-related revenue that Debtor was forced to pay because by that point Debtor was effectively a hostage of Siemens and Quammen (who were responsible for the needed remediation in the first place and whose own breaches of express/implied warranties necessitated the additional attempts to fix their own errors).
> 23. Once again, to the extent that Siemens and, later, Cerner attempted to address Soarian's issues, Siemens/Cerner enjoyed a windfall—remediation charged to Debtor from 2014 through 2016 totaled more than $11 million.[253]

The Court finds these allegations describe the transfers and amounts at issue and state a legally cognizable and plausible claim to relief.[254]

Cerner also argues that "the Complaint does not contain facts indicating Debtor was insolvent or near-insolvent at the time the at-issue transfers were made" as required by law.[255] Cerner invokes the following two statutes[256]:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under

---

[251] *See* Dkt. No. 49 at 4 & 10.
[252] Dkt. No. 49 at 10, § F.
[253] Dkt. No. 10 at 7–8, ¶¶ 19, 23.
[254] *See supra* note 49.
[255] Dkt. No. 49 at 10, § F.
[256] *Id.*

an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for such transfer or obligation; and was **insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation**.[257]

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the **debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation**.[258]

However, Plaintiff repeatedly alleged insolvency at the times Debtor paid for Soarian remediation subsequent to the hospital opening.[259] For example, Plaintiff specifically alleges that, "[a]t all times subsequent to opening the medical facility, Debtor was incapable of paying its debts as they came due and was insolvent. Despite this insolvency, Debtor paid Siemens and Cerner millions in fees" for remediation efforts.[260] The Court finds Plaintiff's complaint does allege Debtor's insolvency at the time of paying remediation fees, without receiving a "reasonably equivalent value in exchange" "considering that Soarian never did reach any level of acceptable functionality."[261] These allegations are substantively sufficient under the relevant statutes.[262]

However, the Court notes that 11 U.S.C. § 548(a)(1) requires the transfer to be avoided to be "made or incurred on or within 2 years before the date of the filing of the petition." Debtor's

---

[257] 11 U.S.C. § 548(a)(1)(B)(ii)(I) (emphasis added).

[258] TEX. BUS. & COM. CODE ANN. § 24.006(a) (West 2020) (emphasis added).

[259] Dkt. No. 10, ¶¶ 26, 88, 95; *cf. id.* at 7, ¶ 20 ("All told, these Soarian malfunctions directly caused Debtor to lose approximately $82 million in payments from insurance carriers, patients, and various state and federal healthcare agencies.").

[260] *Id.* at 9, ¶ 26.

[261] *Id.*

[262] The Court notes that 11 U.S.C. § 548(a)(1) requires the transfer to be avoided to be "made or incurred on or within 2 years before the date of the filing of the petition." Debtor's petition was filed in 2019. Dkt. No. 10 at 3, ¶ 7. Transfers before 2017 would appear to be barred under the federal statute. However, although Plaintiff alleges that Defendants charged (and Plaintiff made) remediation payments "from 2014 through 2016

petition was filed in 2019,[263] so payments made before 2017 cannot be avoided under the federal statute. Plaintiff alleges that "remediation charged to Debtor from 2014 through 2016 totaled more than $11 million"[264] and admits that "the Debtor last *paid* Cerner/Siemens to remediate in 2016."[265] Accordingly, the remediation payments cannot be avoided under § 548, but may be avoidable under the counterpart Texas statutes, which do not contain time bars.[266] Therefore, the Court agrees with Cerner that Plaintiff's count 12, which seeks to avoid transfers only under the federal § 548(a)(1),[267] "should be dismissed for a failure to state a factually and legally plausible claim."[268]

Defendant Siemens moves to dismiss Plaintiff's count 13 as a general request for a specific remedy rather than an independent cause of action.[269] Plaintiff's count 13 is brought pursuant to 11 U.S.C. § 550,[270] which provides that Plaintiff (as bankruptcy trustee) may recover certain values if a transfer is avoided under 11 U.S.C. §§ 544 or 548, *inter alia*. Plaintiff's counts 10 and 11 seek to avoid transfers under 11 U.S.C. § 544.[271] Whether invocation of § 550 in these circumstances is proper as an independent cause of action appears to be an unsettled issue.[272] However, Siemens cites no authority for the proposition that Plaintiff cannot state a claim under

---

[263] Dkt. No. 10 at 3, ¶ 7.
[264] Dkt. No. 10 at 8, ¶ 23.
[265] Dkt. No. 58 at 18 n.9 (emphasis in original).
[266] *See* TEX. BUS. & COM. CODE ANN. §§ 24.005–.006.
[267] Dkt. No. 10 at 17–18, ¶¶ 93–97.
[268] Dkt. No. 49 at 10, § F.
[269] Dkt. No. 50 at 24, § I; *accord id.* at 6 ("Trustee's claims for unjust enrichment, recovery of fraudulent transfers and recovery of attorney's fees and costs are also subject to dismissal because they are not independent causes of action.").
[270] Dkt. No. 10 at 18, ¶ 98.
[271] *See* Dkt. No. 10 at 15–18, ¶¶ 79–98.
[272] *Compare Coggin v. Coggin*, 30 F.3d 1443, 1454 (11th Cir. 1994) ("[W]e agree with the bankruptcy and district courts that there is no cause of action created by section 550(a)(1) in a trustee to recover the value of an avoidable conveyance from a transferring debtor."), *with Smith v. Nicholas/Earth Printing, L.L.C.*, 358 B.R. 693, 714 (Bankr. S.D. Tex. 2007) (implying there is a cause of action under 11 U.S.C. § 550 if the trustee succeeds in an avoidance claim under other provisions of the Bankruptcy Code), *and Steel, Inc. v. Windstein*, 55 B.R. 426, 431 (Bankr. E.D. La. 1985) ("Plaintiff has stated a cause of action under § 550(a)(1) against Defendants because the Plaintiff has pleaded all the essential elements of a cause of action under that provision.").

§ 550,[273] particularly if Plaintiff does state a claim for avoidance under § 544.[274] Accordingly, the Court is not persuaded by Siemens's argument for dismissal of count 13.

The Court **GRANTS** Cerner's motion to dismiss to the extent it seeks to dismiss Plaintiff's claim for avoidance of fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). Plaintiff's count 12 is **DISMISSED** in its entirety. The Court **DENIES** Cerner's motion to the extent it seeks to dismiss Plaintiff's counts 10 and 11. The Court **DENIES** Siemens's motion to the extent it seeks to dismiss Plaintiff's count 13.

### 7.  Count 14: Recovery of Attorney's Fees and Costs Against all Defendants

Defendants move to dismiss Plaintiff's count 14, arguing that it is not an independent cause of action or a standalone legal claim.[275] Plaintiff offers no response.[276] Accordingly, the Court assumes Plaintiff is not opposed to dismissal of count 14.[277] In any case, the Court agrees with Defendants that "attorney's fees are a form of relief, not an independent cause of action," and dismissing a count or claim for attorneys' fees "does not preclude the possibility of recovery of attorney's fees at trial. It merely precludes the recovery of attorney's fees as a standalone action."[278] The Court will interpret Plaintiff's invocation of various statutes regarding her claim for attorney's fees and costs[279] as part and parcel of Plaintiff's prayer for "recovery all costs and attorneys' fees incurred obtaining the relief sought."[280] Therefore, to the extent Plaintiff pleads count 14 for the recovery of attorney's fees and costs as an independent cause of action, it is **DISMISSED**.

---

[273] *See* Dkt. No. 50 at 24, § I.
[274] *Cf. In re Burns*, 322 F.3d 421, 427 (6th Cir. 2003) (holding that avoidance under other provisions does not automatically trigger § 550 recovery).
[275] Dkt. No. 49 at 10, § G; Dkt. No. 50 at 24, § I.
[276] *See* Dkt. No. 58.
[277] LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition.").
[278] *Emerald City Mgmt., LLC v. Kahn*, No. 4:14-CV-358, 2016 WL 98751, at *26 (E.D. Tex. Jan. 8, 2016).
[279] Dkt. No. 10 at 18–19, ¶¶ 99–102 (citing 11 U.S.C. §§ 105, 544, 547, 550(a); TEX. BUS. & COM. CODE ANN. § 24.013; TEX. CIV. PRAC. & REM. CODE ANN. § 38.001).
[280] *Id.* at 20, ¶ (ix).

8. *Theories of Liability*

Plaintiff includes a "Theories of Liability" section in her complaint, alleging a civil conspiracy, "assisting or encouraging," and "assisting and participating."[281] For example, Plaintiff alleges that

> Quammen and Siemens were members of a combination whose object was to accomplish an unlawful purpose, or a lawful purpose by unlawful means. Each had a meeting of the minds on the object or course of action, and at least one of the members committed an unlawful, overt act to further the object or course of action. Debtor suffered injury as a proximate result. Therefore, Quammen and Siemens are jointly and severally liable.[282]

Defendant Cerner moves to dismiss Plaintiff's "Theories of Liability," arguing they "are not standalone legal claims" and should be "dismissed for failure to state a plausible claim."[283] Plaintiff responds that her theories of liability "are not standalone causes of action but are instead generally applicable principles that render Defendants' jointly and severally liable, meaning they are properly pled separately."[284] In Texas, "civil conspiracy is a theory of vicarious liability and not an independent tort."[285] Therefore, to the extent Plaintiff pleads a civil conspiracy as an independent cause of action, it is not viable. However, under Federal Rule of Civil Procedure 12(b), Defendant's "defense to a claim for relief" may be asserted by motion, and a claim to relief may be dismissed for "failure to state a claim upon which relief can be granted," but because Plaintiff is not asserting her theories of liability as a claim for relief, the Court holds they are not subject to dismissal on a Rule 12(b)(6) motion. To the extent Cerner seeks to dismiss Plaintiff's "Theories of Liability" for failure to state a claim upon which relief can be granted, such motion is **DENIED**.

---

[281] Dkt. No. 10 at 19–20, ¶¶ 104–07.
[282] *Id.* at 19, ¶ 104.
[283] Dkt. No. 49 at 10, § G.
[284] Dkt. No. 58 at 16 n.8.
[285] *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).

### 9.  Claim for Consequential or Exemplary Damages

In her complaint, Plaintiff claims "exemplary/punitive damages" and prays for recovery of consequential and exemplary damages.[286] Defendant Siemens moves to dismiss this claim as "barred by the express terms of the MSA."[287] Plaintiff responds that she may rescind a contract induced by fraud, that Texas's statutory exclusion of consequential damages does not apply, that it would be unconscionable to apply the contractual limitation on consequential damages, that the contract failed in its essential purpose so the damages limitation should not be applied, and that the limitation of damages is actually an unenforceable liquidated damages provision.[288] Because the Court interprets Plaintiff's prayer for consequential and exemplary damages as a "claim" upon which the Court can grant relief, whether Plaintiff states a claim for consequential and exemplary damages is a ripe and justiciable issue on the instant motion to dismiss.[289]

Siemens cites the following provision of the parties' master services agreement,[290] which is printed in the agreement entirely in upper case and bolded letters:

> Damage Waiver. The parties expressly agree that independent of the exclusive remedies expressed in Section 13 (limitation of remedies), neither party shall be liable for indirect, incidental, consequential, punitive, or exemplary damages, regardless of whether the party in breach was advised of, or otherwise should have been aware of, the possibility of such damages, nor for loss of in-house stored, recorded or transmitted data. The foregoing is a separate, essential term of this agreement and shall be effective even in the event of the failure of any remedy, exclusive or not.[291]

The Fifth Circuit holds that "whenever the parties have, as here, excluded consequential damages by agreement, the court must be careful to limit the damage award to the difference-in-value component of the contract claim and must not include damages for that which would otherwise

---

[286] Dkt. No. 10, ¶¶ 58, 67 & at 20.
[287] Dkt. No. 50 at 21.
[288] Dkt. No. 58 at 24–28.
[289] Dkt. No. 50.
[290] *Id.* at 21.
[291] Dkt. No. 52-1 at 20, § 14.

be compensable as consequential losses."[292] This court follows this instruction.[293] Texas courts similarly deny consequential damages where the relevant agreement "expressly provides" that a party shall not be liable for consequential damages.[294] Texas's Uniform Commercial Code also provides that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. . . . [L]imitation of damages where the loss is commercial is not [prima facie unconscionable]."[295]

Plaintiff first argues that she may rescind a contract induced by fraud,[296] but the Court has already rejected this theory.[297] Plaintiff next argues that the Uniform Commercial Code does not apply,[298] but the Court holds that it does.[299] Plaintiff next argues unconscionability.[300] The Uniform Commercial Code makes clear that an unconscionable contractual damages limitation may not operate.[301]

> In assessing whether a contract generally is unconscionable under the totality of the circumstances, [Texas courts] consider: (1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the non-bargaining ability of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable.[302]

---

[292] *Reynolds Metals Co. v. Westinghouse Elec. Corp.*, 758 F.2d 1073, 1079 (5th Cir. 1985).

[293] *See Agip Petrol. Co. v. Gulf Island Fabrication, Inc.*, 56 F. Supp. 2d 776, 777 (S.D. Tex. 1999) (Hughes, J.) (holding that a party could not be liable for consequential losses because of the parties' agreement and noting that "[t]he purpose of a contract is to allocate responsibility. The risks of loss from particular causes and the types of recoveries for those losses are common provisions. Parties to a contract allocate risk in advance on obviously uncertain knowledge about the actual outcome; an adverse outcome is when the contract counts. . . . . [a party] did not negotiate for an exception to the exception of consequential damages for any particular cause; it agreed to a blanket ban.").

[294] *Frost Nat'l Bank v. Heafner*, 12 S.W.3d 104, 111 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

[295] TEX. BUS. & COM. CODE ANN. § 2.719(c) (West 2020).

[296] Dkt. No. 58 at 24, § E.

[297] *See supra* text accompanying note 178.

[298] Dkt. No. 58 at 24, § E.1.

[299] *See supra* notes 98–105 and accompanying text.

[300] Dkt. No. 58 at 24–25, § E.2.

[301] TEX. BUS. & COM. CODE ANN. § 2.719(c) & cmts. 1, 3; *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 131 (Tex. App.—El Paso 2018, no pet.) ("Texas recognizes both procedural and substantive unconscionability as defenses against contract enforcement.").

[302] *Ridge Nat. Res.*, 564 S.W.3d at 131.

At this stage, the Court is assessing only whether Plaintiff states a plausible claim to relief. Assessment of these various factors is likely to be fact-intensive and better addressed at the summary judgment or trial stage.[303] However, Plaintiff's complaint must at least indicate that unconscionability is a plausible theory. "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[304] Plaintiff argues that the Court "may infer unconscionability on this record because, now that Siemens has placed the Siemens MSA before the Court, it can see for itself the shocking disparity between the damages caused by the worthless Soarian software and the amount to which the Siemens' MSA attempts to limit liability."[305] But this is a fallacious ex post facto rationalization. A contractual limitation of liability is of no consequence when the aggrieved plaintiff's ultimate damages do not exceed the contractual ceiling; contractual limitations of liability will only ever be enforced against a party who claims her damages exceed the limitation, even if the party laments injustice in its enforcement. The Court cannot look to damages after the fact to determine that the contractual limitation of liability was unconscionable ab initio.

Instead, the Court will look to Plaintiff's allegations to assess whether Plaintiff makes out a plausible claim for or indication of unconscionability. Plaintiff alleges that "[b]eginning in mid-2013 during the lead up to the facility's opening, Debtor engaged in negotiations with Siemens for the purchase of a license to run" Soarian, but did not sign the agreement until the

---

[303] *See Thompson v. City of Waco, Texas*, 764 F.3d 500, 506 (5th Cir. 2014) ("We of course express no view on Thompson's likelihood of success, noting only that further assessment of his demotion claim is fact-intensive and better suited for the summary-judgment or trial stage."); *G & F Graphic Servs. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 594 (D.N.J. 2014) ("The unconscionability inquiry is fact-intensive and therefore more appropriately explored at summary judgment, as Inserts East suggests.").

[304] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[305] Dkt. No. 58 at 25.

end of September 2013.[306] The time Debtor took to sign the agreement indicates that there was

no procedural unconscionability, as Debtor was not under severe time pressure and took months

to consider its options, and Plaintiff did not allege that Debtor was unable to bargain.[307] Plaintiff

does not argue the master services agreement was substantively unconscionable, against public

policy, or oppressive.[308] There is a high bar to meet the doctrine of unconscionability to avoid a

damages limitation. Plaintiff's cited case elaborates:

> The Texas Supreme Court has held that the State has a public policy strongly
> favoring the freedom of parties to contract. But this notion that parties are free to
> negotiate their own bargains conflicts with the equally compelling notion that
> grossly unfair bargains should not be enforced. The defense of unconscionability
> balances these competing interests, but because the defense of unconscionability
> allows for an otherwise valid contract to go unenforced, the bar for establishing
> the defense is set very high. **The fact that a party entered into a contract that
> was lawful but improvident or that an opposing party drove a hard bargain
> during negotiations does not justify a finding of unconscionability.** Instead,
> the grounds for substantive abuse must be sufficiently shocking or gross to
> compel the court to intercede, and the same is true for procedural abuse—the
> circumstances surrounding the negotiations must be shocking.[309]

Simply put, taking all the allegations of Plaintiff's complaint as true, Plaintiff's complaint does

not indicate she will ever be able to meet the high standard to show unconscionability and avoid

the effect of the contractual limitation of liability.

Plaintiff next argues that the limitation of liability is "inapplicable because that provision

failed in its essential purpose."[310] Plaintiff's argument requires some explication. Texas's

Uniform Commercial Code, in a section governing contractual limitations on remedies, provides:

> (b) Where circumstances cause an exclusive or limited remedy to fail of its essential
> purpose, remedy may be had as provided in this title.

---

[306] Dkt. No. 10 at 3–4, ¶¶ 9–12.

[307] *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

[308] *See* Dkt. No. 58 at 25.

[309] *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 131 (Tex. App.—El Paso 2018, no pet.) (cleaned up) (emphasis added).

[310] *Id.* at 25–26.

(c) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.[311]

Plaintiff invokes the "fail of its essential purpose" language in subsection (b). However, it is subsection (c) that actually governs a limitation on consequential damages.

The parties have stumbled into a legal quagmire that has divided courts across the nation. The controversy is over whether the failure of an exclusive remedy referenced in a limitation on liability clause should result in the mooting of the remaining limitations on liability, including damage disclaimers. In other words, is a limitation on liability clause a house of cards that collapses when the exclusive remedy card is removed?[312]

Here, Plaintiff admits that the contract's "limits on damages and remedy-by-repair" are "technically separate provisions."[313] Indeed, the relevant contract language "expressly" makes the damages waiver "independent" and "separate" from the remedies limitation.[314] This Court must therefore stake out its position on this Uniform Commercial Code controversy.

The Second Circuit acknowledged "[t]here exists a split of authority on whether subsections ([(b)]) and ([(c)]) [of section 2-719] operate independently or whether the failure of an exclusive remedy precludes enforcement of a consequential damages exclusion," but held that New York law clearly established that "the failure of a limited remedy does not render ineffective all other limitations of liability."[315] Although Plaintiff's cited Third Circuit case held that the corrective remedy "failed of its essential purpose," the Third Circuit also held that there was "no reason to hold, as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding

---

[311] TEX. BUS. & COM. CODE ANN. § 2.719(b)–(c).

[312] *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 830 (E.D. Pa. 2000).

[313] Dkt. No. 58 at 26 n.13.

[314] *Compare* Dkt. No. 52-1 at 20, § 14, *with* Dkt. No. 52-1 at 19, § 13 (describing remedies as generally repair, or a monetary payment in the event of a failure of repair).

[315] *McNally Wellman Co. v. N.Y. State Elec. & Gas Corp.*, 63 F.3d 1188, 1197 (2d Cir. 1995).

consequential damages. The two are not mutually exclusive."[316] In 2005, this Court thoroughly considered this controversy. After finding no governing Fifth Circuit or Texas appellate precedent, the Court concluded that:

> Upon a review of the arguments on both sides, the Court is more persuaded by the reasoning of courts that treat limitation of liability provisions and limitation of remedy provisions as independent under the UCC. Accordingly, the Court predicts that the Texas Supreme Court would hold that a limitation of liability clause that purports to exclude any and all liability for consequential damages, like the one in the instant case, cannot be voided even if a limited remedy clause fails of its essential purpose.[317]

The Court revisited its opinion months later and reached the same conclusion: "the viability of a provision limiting liability for consequential damages is not dependent on the success of the remedy in the limited warranty clause."[318] The Northern District of Texas (and other courts) have followed this reasoning.[319] The Court's independent research did not disclose Fifth Circuit or Texas jurisprudence that counsels a different conclusion than Texas federal district courts including this Court have previously reached, and Plaintiff does not point to any authoritative contraindicative case.[320] The Court sees no reason to reinvent the wheel, and agrees with the Third Circuit and numerous other authorities that the "better reasoned approach is to treat the consequential damage disclaimer as an *independent provision, valid unless unconscionable*."[321]

---

[316] *Chatlos Sys. v. Nat'l Cash Register Corp.*, 635 F.2d 1081, 1086 (3d Cir. 1980).

[317] *Bray Int'l, Inc. v. Computer Assocs. Int'l, Inc.*, No. CIV.A. H-02-98, 2005 WL 6792280, at *10–15 (S.D. Tex. Sept. 30, 2005) (Rainey, J.).

[318] *Bray Int'l, Inc. v. Computer Assocs. Int'l, Inc.*, No. CIV H-02-0098, 2005 WL 3371875, at *3 (S.D. Tex. Dec. 12, 2005) (Johnson, J.).

[319] *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:11-CV-0870-D, 2013 U.S. Dist. LEXIS 112865, at *29–30 n.14 (N.D. Tex. Aug. 9, 2013); *see Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 721 (S.D. Tex. 2000) ("Indeed, a majority of jurisdictions to consider the question has concluded that a waiver of consequential damages can be valid notwithstanding the fact that a limitation of remedy has failed of its essential purpose."); *Envirotech Corp. v. Halco Eng'g, Inc.*, 364 S.E.2d 215, 220 (Va. 1988) ("A number of logical, sound reasons mandate why, without more, the failure of a limited remedy of repair should not invalidate a wholly distinct clause of the contract excluding recovery for consequential damages. In the first place, the substantive content of subsections (2) and (3) of the statute are distinctly different.").

[320] *See* Dkt. No. 58 at 26.

[321] *Chatlos Sys. v. Nat'l Cash Register Corp.*, 635 F.2d 1081, 1086 (3d Cir. 1980) (emphasis added) (footnote omitted). *Compare* Tex. Civ. Bus. & Com. Code Ann. § 2.719(b), *with id.* § 2.719(c).

Accordingly, because the contractual limitation of damages provision in this case is, by its terms, distinctly separate from the limitation of remedy provision,[322] Plaintiff's argument that Defendants' repairs caused the limitation of damages provision to fail in its essential purpose is irrelevant.

Plaintiff's last argument to avoid dismissal of her claim for exemplary or consequential damages is that "[t]he invoked waiver/limitation provisions are actually unenforceable liquidated-damage provisions."[323] "Generally, contractual provisions fixing liability at a specific amount or at a specified percentage of the service charge are categorized as liquidated damages provisions. To enforce a liquidated damages clause, the court must find that: (1) the harm caused by the breach is incapable of being estimated or is difficult to estimate at the time of entry into the agreement, and (2) the amount of liquidated damages called for is a reasonable forecast of just compensation."[324]

The relevant provision of the parties' agreement states that "this Section 13 (Limitation of Remedies) states the exclusive remedy for any cause whatsoever against Siemens, regardless of the form of action, whether based in contract, tort, strict liability, or any other theory of law."[325] Plaintiff argues that the following Section 13 "places a severe limit on the amount of recovery available to Debtor (now the Trustee) in the event of Defendants' breach:"[326]

> If breach cannot be remedied by repair, re-performance, or replacement by Siemens, or if a repair, reperformance, or replacement remedy is not applicable, then Siemens shall be liable to Customer, only for direct damages, and only in the aggregate up to the *greater of*;
>
> (i) $250,000; or

---

[322] *See supra* notes 291, 314.
[323] Dkt. No. 58 at 27–28.
[324] *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys.*, 997 S.W.2d 803, 810 (Tex. App.—Dallas 1999, no pet.).
[325] Dkt. No. 52-1 at 20, § 13(f).
[326] Dkt. No. 58 at 27 (citing Dkt. No. 52-1 at 19, § 13(b)).

(ii) for claims arising prior to three (3) months following First Productive Use of the first Application to have First Productive Use, the total amounts paid by Customer to Siemens under this Agreement up to the date of said breach;

(ii) for claims arising after three (3) months following First Productive Use of the first Application to have First Productive Use but prior to the expiration of the Support Term, the sum of any Perpetual License fees paid plus any Recurring Fees paid by Customer to Siemens during the twenty-four (24) months immediately preceding the date of said breach.[327]

However, "a contractual provision setting an upper limit to the amount recoverable is considered a limitation of liability provision," not a liquidated damages provision.[328] Liquidated damages provisions "determin[e] in advance the measure of damages if a party breaches the agreement."[329] Section 13 does not do so. When a contractual provision "clearly serves as a ceiling on amounts recoverable, not as a lump sum to be automatically triggered upon a finding of liability," it is enforceable under Texas law so long as it does not violate public policy.[330] "Generally, an agreement to limit liability will not violate public policy if there is no disparity of bargaining power between the parties."[331] As the Court held, Plaintiff has neither asserted nor shown a disparity of bargaining power or other indicia of unconscionability.[332] The Court finds that the Section 13 at issue here sets a ceiling that limits liability to no greater than provided for under the agreement; the Court is not persuaded that Section 13 is actually a liquidated damages provision or that it is unenforceable under Texas law or public policy.

Accordingly, the Court **GRANTS** Defendant Siemens's motion to dismiss[333] to the extent it seeks to dismiss Plaintiff's claims that seek damages in excess of the contractual limits. To the

---

[327] Dkt. No. 52-1 at 19, § 13(b).

[328] *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys.*, 997 S.W.2d 803, 810 (Tex. App.—Dallas 1999, no pet.); *accord Fox Elec. Co. v. Tone Guard Sec., Inc.*, 861 S.W.2d 79, 83 (Tex. App.—Fort Worth 1993, no pet.); *Shakeri v. ADT Sec. Servs.*, No. 3:13-CV-2852-D, 2014 U.S. Dist. LEXIS 157250, at *29–30 (N.D. Tex. Nov. 6, 2014).

[329] *Liquidated-damages clause*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[330] *Moon Soo Kim v. Stanley Convergent Sec. Sols.*, No. 3:12-CV-4445-M, 2013 WL 1715789, at *2 (N.D. Tex. Apr. 19, 2013).

[331] *Arthur's Garage, Inc.*, 997 S.W.2d at 810.

[332] *See supra* text accompanying notes 306–309; Dkt. No. 58 at 27–28, § E.4.

[333] Dkt. No. 50.

extent Plaintiff's claims seek damages against Defendants Siemens or Cerner in excess of the

Siemens master services agreement[334] contractual limits, such claims are **DISMISSED**.[335]

### III. CONCLUSION AND HOLDING

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

Defendants' motions to dismiss.[336] Plaintiff's following claims are **DISMISSED**:

- Count 2: breach of express warranties against all Defendants.
- Count 3: breach of implied warranties against all Defendants.
- Count 4: negligence against Defendants Siemens and Cerner.
- Count 5: fraud against Defendants Siemens and Cerner.
- Count 6: fraudulent inducement against Defendant Siemens.
- Count 7: negligent misrepresentation against Defendants Siemens and Cerner.
- Count 8: negligent hiring against Defendants Siemens and Cerner.
- Count 9: unjust enrichment against all Defendants.
- Count 12: avoidance of fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) against Defendant Cerner.
- Count 14: recovery of attorney's fees and costs against all Defendants.
- Claim for consequential or exemplary damages against Defendants Siemens and Cerner.

Plaintiffs' claims for breach of contract against all Defendants; negligence against Defendant

Quammen; fraud against Defendant Quammen; fraudulent inducement against Defendant

Quammen; negligent misrepresentation against Defendant Quammen; negligent hiring against

Defendant Quammen; avoidance of fraudulent transfer in counts 10, 11, and 13 against

Defendants Siemens and Cerner; and consequential and exemplary damages claim against

Defendant Quammen survive.

In light of this opinion,[337] the Court **ORDERS** the parties to appear before the Court on

**October 14, 2020, at 9:00 a.m.** for a pretrial conference and to submit a renewed joint

discovery/case management plan[338] no later than **October 2, 2020**.

IT IS SO ORDERED.

---

[334] Dkt. No. 52-1.

[335] *Cf. Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)) ("[B]reach of contract cannot support recovery of exemplary damages.").

[336] Dkt. Nos. 49–50.

[337] *See* Dkt. No. 67 at 2 ("Upon issuance of the Court's opinion on Defendants' motions to dismiss, the Court will issue a Federal Rule of Civil Procedure 16 scheduling order or schedule a conference if necessary.").

[338] *See* Dkt. No. 53.

DONE at McAllen, Texas, this 24th day of August 2020.

Micaela Alvarez
United States District Judge